**Charles Douglas GULLEY, Jr.; Elizabeth Gulley, Appellants,**

v.

**The MAYO FOUNDATION, Appellee.**

**No. 88–5435.**

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1989.

Decided Sept. 21, 1989.

---

Mark Hallberg, Minneapolis, Minn., for appellants.

Thomas Tinkham, Minneapolis, Minn., for appellee.

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Charles Gulley challenges the district court's grant of summary judgment for the defendant, the Mayo Foundation. Gulley sued the Foundation for damages allegedly resulting from treatment at the Mayo Clinic. The district court[1] dismissed Gulley's case because the statute of limitations had expired. We affirm.

## I. BACKGROUND

Gulley received treatment at the Mayo Clinic for nodules in his right lung. After a series of x-rays, Gulley underwent a thoracotomy on January 16, 1985. After the operation, Gulley experienced persistent shortness of breath. Gulley returned to the Mayo Clinic for examinations and recommendations in May, 1985, and May, 1986. His treatment at the Clinic terminated on May 19, 1986. Gulley claims that the Clinic was negligent in inappropriately recommending surgery, in failing to obtain his informed consent prior to surgery, and in performing the surgery. In Minnesota, claims for malpractice against physicians and hospitals must be commenced within two years of the time the cause of action accrues. Minn.Stat.Ann. § 541.07 (West 1988).

On January 6, 1987, Gulley's counsel contacted the Mayo Foundation and requested a three-month extension of the statute of limitations. The Foundation agreed to an extension until April 6, 1987. On March 13, Gulley's new attorney requested an additional extension of the statute of limitations, and the Foundation agreed to extend the statute of limitations to June 5, 1987. On May 15, Gulley's counsel requested a third extension. The Foundation agreed to extend the statute of limitations until July 6, 1987.

On July 1, 1987, Gulley filed his complaint in district court and mailed the sum-

mons, complaint, and notice and acknowledgement of summons and complaint to the Foundation via certified mail, return receipt requested. The documents were received by the Foundation on July 6, 1987, as indicated by the postal service "green card" which acknowledged receipt. On July 24, 1987, the Foundation orally acknowledged service of summons and complaint, specifically noting that its acknowledgment was effective only as of that date. On October 2, 1987, the Foundation executed an "Acknowledgement of Receipt of Summons and Complaint," which stated that the summons and complaint were received and accepted on July 24th.

In district court, the Foundation asserted its statute of limitations defense and moved for summary judgment. The district court granted the motion, finding that the "single act exception" to the cessation of treatment rule caused Gulley's limitations period to begin to run on January 16, 1985, and holding that Gulley's service of process upon the Foundation was not effective.

## II. DISCUSSION

### A. Accrual of Gulley's Cause of Action

Under Minnesota law, a cause of action for medical malpractice generally accrues when the physician's treatment of the particular condition at issue ends. *Grondahl v. Bulluck*, 318 N.W.2d 240, 243 (Minn.1982) (citations omitted). However, the Minnesota Supreme Court has adopted the "single act exception" to the termination of treatment rule. Under the exception, if the alleged malpractice consists of a single act, the statute of limitations runs from the time of that act, even though the doctor-patient relationship continues. *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 694 (Minn.1980). *See also Schmitt v. Esser*, 178 Minn. 82, 84, 226 N.W. 196, 197 (1929) (stating that "if there be but a single act of malpractice, subsequent time and effort to merely remedy or cure that act could not toll the running of the statute"). The exception applies when the alleged malpractice consists of a single act which is complete at a precise time, which no continued course of treatment can cure or relieve, and where the plaintiff is actually aware of the facts upon which the claim is based. *Swang v. Hauser*, 288 Minn. 306, 180 N.W.2d 187, 190 (1970).

Gulley claims the Foundation presented no evidence that Gulley was actually aware of the facts upon which the claim was based; and, therefore, it must be presumed that Gulley did not have actual knowledge of malpractice prior to the last date of treatment, May 19, 1986. Therefore, the exception would not apply and service on July 24, 1987, would be well within the two year statute of limitations.

We disagree. The single act exception applies because, despite Gulley's subsequent visits to the Clinic, all alleged malpractice (recommending surgery, obtaining prior consent, and performing surgery) occurred at or prior to the performance of the January 16, 1985 surgery. *See Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 429 (Minn.1988) (holding that the single act exception applies when plaintiff's claim rests solely upon the University's negligence in failing to disclose the risks and the manufacturer's recommendations associated with insertion of an IUD); *Collins v. Johnson*, 374 N.W.2d 536, 539–41 (Minn.App.1985) (applying the single act exception to plaintiff's allegation that her physician failed to advise her about the surgical procedure and risks of a "tummy tuck," despite the fact that the patient had four post-operative visits).

Gulley's ignorance of the existence of a cause of action does not render the single act exception inapplicable to his claims. *See Goellner v. Butler*, 836 F.2d 426, 430–31 (8th Cir.1988). "In the malpractice context, the Minnesota courts have expressly rejected the 'discovery rule.' In the absence of fraud, ignorance of the existence of a cause of action does not toll the statute of limitations, nor is it necessary that the ultimate damage be known or predictable, so long as some damage has occurred." *Id.* at 431 (citations omitted).

Based on Minnesota law, the district court found that the cause of action accrued on January 16, 1985. We accord

substantial deference to the district court's holding when reviewing an interpretation of state law made by a resident federal judge. *Besta v. Beneficial Loan Co.*, 855 F.2d 532, 533–34 (8th Cir.1988). We, therefore, affirm the holding of the district court that the single act exception applies to Gulley's cause of action, and thus the running of the statute of limitations commenced on January 16, 1985.

## B. Commencement of Gulley's Lawsuit

Under Minnesota law, which applies in this diversity action, *see Fischer v. Iowa Mold Tooling Co.*, 690 F.2d 155, 156 (8th Cir.1982), a lawsuit is commenced when service of process is effected upon the defendant. Minn.R.Civ.P. 3.01.[2] The federal rules govern service of process. Fed.R. Civ.P. 4. Specifically, Rule 4(c)(2)(C) provides that a summons and complaint may be served on a defendant:

> (i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State, or
> (ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgement conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgement of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made [in another manner described by the rule].

### 1. Service Pursuant to state Law, Rule (4)(c)(2)(C)(i)

■ Rule 4(c)(2)(C) provides that service of process may be effectively rendered "pursuant to the law of the State in which the district court is held." The Minnesota Rules of Civil Procedure allow service by mail. Minn.R.Civ.P. 4.05. Rule 4.05 explicitly states, however, that "[i]f acknowledgement of service under this rule is not received by the sender within [twenty days], service *shall be ineffectual.*" *Id.* (emphasis added).

Gulley argues that service was effective pursuant to Minnesota law, not under Rule 4.05, but rather by virtue of the Minnesota Supreme Court's rationale in *Stonewall Ins. Co. v. Horak*, 325 N.W.2d 134 (Minn. 1982). Gulley notes that, although Rule 4.05 was added to the state civil procedure rules in 1985, after *Stonewall*, the decision remains intact by virtue of an Advisory Committee Note which expressly states that Rule 4.05 does not modify the holding in *Stonewall.*

In *Stonewall*, the Minnesota Supreme Court addressed the issue of whether, under the state long-arm statute, service of process could be made by certified mail on a nonresident individual in the military service residing in a foreign country. The court answered that question in the affirmative. *Id.* at 135.

The defendant, Horak, residing in West Germany, had received copies of the summons and complaint via certified mail and had personally signed the green return receipt card. The court held that this type of service was sufficient to satisfy personal service as required by the state rule of civil procedure which was in effect at the time. The court reasoned that actual, timely notice was, in this situation, equivalent to personal service. The court noted that no feasible means of making personal service was suggested. The court concluded that personal service may be made via certified mail on a nonresident defendant under the state long-arm statute, adding that pru-

---

**2.** Specifically, Rule 3.01 states:

A civil action is commenced against each defendant:

(a) when the summons is served upon that defendant, or

(b) at the date of acknowledgement of service if service is made by mail, or

(c) when the summons is delivered to the sheriff in the county where the defendant resides for service; but such delivery shall be ineffectual unless within 60 days thereafter the summons is actually served on that defendant or the first publication thereof is made.

dence dictates that the certified mail indicate delivery "to addressee only." *Id.* at 135–36.

We believe that *Stonewall* is distinguishable from the case at bar both factually and legally. The *Stonewall* case dealt specifically with personal service to nonresidents under the state long-arm statute. Furthermore, the court discussed the importance of actual notice as evidenced by Horak's signature on the green card. In this case, apparently a clerk in the Foundation's mail room signed the green card, not the named addressee, Robert Moore, legal counsel for the Mayo Clinic. The green card provides no evidence that the Foundation's legal counsel received actual, timely notice of the commencement of a lawsuit.[3] In addition, the Minnesota Supreme Court noted that alternate means of service were not feasible; Rule 4.05 now provides for various means of service upon a resident defendant such as the Foundation.

Although the state Advisory Committee has noted that Rule 4.05 does not modify the holding in *Stonewall*, it appears to us that the rationale behind this statement stems from the fact that *Stonewall* discusses personal service upon an individual under the long-arm statute, while Rule 4.05 deals specifically with service by mail in any action. Under Rule 4.05, the service attempted on the Foundation was ineffectual. Although acknowledgement was received by the sender, Gulley, it was not received within the twenty days required by the rule.

### 2. Service by Mail, Rule 4(c)(2)(C)(ii)

■ Gulley argues that signing of the postal service "green card" evidenced receipt of the summons and complaint and thus satisfied the requirement that service be acknowledged. Gulley also contends that formal acknowledgement is not required in order for service by mail under Rule 4(c)(2)(C)(ii) to be effective. We find neither of these arguments to be persuasive.

Rule 4 specifically provides that service of process may be accomplished by mail under specified circumstances and that service "shall be made" by another means if no acknowledgement is received by the sender within twenty days after the date of mailing. We have recently chosen to follow the majority rule that "the provisions of Rule 4(c)(2)(C)(ii) are to be strictly complied with and, that, therefore, if the acknowledgement form is not returned, the formal requirements of mail service are not met and personal service must be obtained." *Young v. Mount Hawley Ins. Co.,* 864 F.2d 81, 82–83 (8th Cir.1988) (per curiam) (citing *Worrell v. B.F. Goodrich Co.,* 845 F.2d 840, 841 (9th Cir.1988); *Combs v. Nick Garin Trucking,* 825 F.2d 437, 447–48 (D.C.Cir.1987); *Green v. Humphrey Elevator & Truck Co.,* 816 F.2d 877, 879–80 (3d Cir.1987); *Norlock v. City of Garland,* 768 F.2d 654, 657 (5th Cir.1985); *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.,* 733 F.2d 1087, 1089 (4th Cir. 1984)).[4]

Thus, the signing of the "green card" was not sufficient to evidence acknowledgement of receipt of the summons and complaint and consequently did not satisfy the requirement of Rule 4(c)(2)(C)(ii) that service be acknowledged in order to be effective. Nor was actual acknowledgement received by Gulley by July 6, 1987. As of the pertinent date, the Foundation

---

**3.** Even if we assume that the mailroom clerk (or, for that matter, legal counsel) was designated by the Foundation, or by law, to receive (and acknowledge) service of summons for the Foundation, the *Stonewall* rationale falls short. *Stonewall* interpreted a Minnesota statute dealing with service upon an *individual* and not upon a foundation or a corporation.

**4.** In *Young,* the summons, complaint, and acknowledgement form were sent via certified mail to a defendant, and the return receipt indicated receipt on behalf of that defendant.

However, no acknowledgement of receipt was filed. Although the ultimate issue in *Young* was whether there was a final appealable order before the court, the initial question of whether the defendant was ever properly served had to be answered before a final determination could be made. The court determined, based on the majority rule, that service was not complete, and this determination was instrumental in the court's final conclusion that the order was appealable. *Young v. Mount Hawley Ins. Co.,* 864 F.2d 81, 82–83 (8th Cir.1988) (per curiam).

had not been effectively served by mail and no alternate means of service was rendered before the statute of limitations expired.

## III. CONCLUSION

Gulley also argues that the Foundation should be estopped from asserting its statute of limitations defense because the Foundation's counsel did not inform Gulley's counsel that service by mail would not be accepted. We find this argument to be without merit.

For the foregoing reasons, we affirm the district court's grant of summary judgment for the Mayo Foundation.