# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3628

_____

Dale W. Long; Betty Jo Long,　　　*
　　　　　　　　　　　　　　　　　*
　　　　Appellants,　　　　　　　 *
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　 *　District Court for the
　　　　　　　　　　　　　　　　　*　Eastern District of Missouri.
Cottrell,　Inc.;　General　Motors　*
Corporation,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Appellees.

_____

Submitted:  May 17, 2001
Filed:  September 7, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and BARNES,[1] District
Judge.

_____

HANSEN, Circuit Judge.

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western
District of Arkansas, sitting by designation.

Following a jury verdict in favor of Cottrell, Inc., (Cottrell) in this products liability case, Dale W. Long and Betty Jo Long appeal the district court's[2] denial of their motion for a new trial. The Longs also appeal the district court's pretrial grant of summary judgment in favor of General Motors Corporation (GM). We affirm the district court's rulings.

I.

Dale Long hauled new automobiles for his employer, Allied Systems, until September 24, 1997, when he allegedly sustained a back injury while untying, or releasing, a Ford vehicle from his automobile transport trailer. Cottrell manufactured the trailer Mr. Long was using at the time he was injured. The trailer was equipped with a manual ratchet device that tightened chains attached to each corner of the vehicles being transported, thus securing the transported vehicles to the trailer.[3] The manual ratchet required the driver to exert significant levels of force to tighten and untighten the chains.

The manual ratchet device used on Mr. Long's trailer was developed in the 1940s. There has been an ongoing effort within the industry to develop better and safer mechanisms for securing hauled vehicles to trailers during transport. The GM Haulaway Committee, which includes employees from GM, carriers that haul GM vehicles, and trailer manufacturers, is one such group, and it has met regularly for years to share new ideas and concepts in an ongoing attempt to improve automobile shipping. Studies concerning injuries to drivers during the tying and untying processes were reported at various GM Haulaway Committee meetings during the late 1970s and

---

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[3]For a more detailed description of how the ratchet works, see Ford v. GACS, Inc., No. 00-1043, 2001 WL ___, slip op. at 2-3 (8th Cir. _____, 2001).

2

1980s. GM Haulaway subcommittees were involved in testing equipment designed by the trailer manufacturers.

The Longs premise their claims of liability against Cottrell on its failure to equip its trailers with a quick release ratchet and against GM on GM's alleged ban on carriers from using a quick release ratchet on trailers hauling GM vehicles. The quick release ratchet is a device that effectively eliminates the need for the driver to exert high levels of force on the ratchet when untying a vehicle. Two other trailer manufacturers received patents for a quick release ratchet in 1979, but neither ratchet was implemented into a trailer at that time, partly because GM did not approve of its carriers using the quick release ratchet because of potential damage to the hauled vehicles. GM required that equipment used to haul its new vehicles be approved by GM and comply with procedures outlined in GM's shipping manual. The manual explained the proper procedure for tying down vehicles to avoid damage to the vehicles. The manual did not address safety issues, however, but was given to the haulers for the purpose of "assist[ing] in the attainment of our mutual goal of delivering a damage-free product." (J.A. at 112.)

Cottrell developed a quick release ratchet in 1992 that was approved by GM in 1993 and became standard throughout the industry. All trailers manufactured by Cottrell after 1993 were equipped with the quick release ratchet. Mr. Long's trailer was manufactured by Cottrell in 1988. Long's employer did not retrofit his trailer with the quick release ratchet, although retrofitting was possible, and Mr. Long continued to use the manual ratchet until the time of his injury in 1997.

The Longs brought this products liability suit against Cottrell as the designer and manufacturer of the ratchet and against GM for influencing the design of the ratchet. The Longs claimed that the ratchet was defectively designed in that it required excessive force to operate. The district court granted GM's motion for summary judgment and the case proceeded to trial against Cottrell. The jury returned a verdict

in favor of Cottrell on the Longs' products liability and negligence claims. The Longs appeal the denial of their motion for a new trial, arguing that evidentiary issues entitle them to a new trial. They also argue that GM's influence over the design of the ratchet and rejection of the quick release ratchet at the time that Mr. Long's trailer was manufactured in 1988 subjected GM to liability under both the products liability and negligence causes of action and thus, GM should not have been granted summary judgment.

## II. Motion for a New Trial Against Cottrell

The Longs argue that they were prejudiced by an improper line of questioning that lacked any evidentiary basis and that suggested that Mr. Long detoured home the night before his injury and sustained his injury there. During Mr. Long's cross-examination, Cottrell's attorney questioned Mr. Long about whether he stopped overnight at his home instead of staying in Columbia, Missouri, as he had testified and as was reflected in his log books. The Longs' attorney objected to the line of questioning, which the district court overruled finding the inquiry to be proper cross-examination. Defense counsel then asked Mr. Long if he had ever been reprimanded for misusing his employer's equipment, to which the Longs' attorney again objected. Out of the jury's hearing, the district court asked Cottrell's attorney if he had any basis to support the line of questioning. The district court rejected Cottrell's offer of proof that a reprimand five months prior to the accident date for misusing equipment and an alleged corroborating statement by an undisclosed Allied employee provided any basis for questioning whether Mr. Long had driven home without permission. The district court sustained the objection but refused the Longs' attorney's request for a curative instruction, not wanting to emphasize the testimony to the jury. Cottrell's next two questions to Mr. Long were:

> Q.   The first stop you had this day, wherever you spent the night, was at Riverside, correct?

4

A.    Yes.

Q.    Let me ask you this. Did you hurt yourself at home that day?

A.    No, I hurt myself unloading the vehicle at Riverside. I was not at home that day.

(Tr. at 141.) Cottrell made no further mention of Long detouring home throughout the rest of the trial.

Mr. Long testified on redirect examination that he had never been reprimanded for detouring to his home without permission from his employer and that he did not in fact stay at his home the night before the injury, an assertion supported by his log books. Long's wife testified that Mr. Long had never driven his truck home and that it would have been utterly impossible for him to do so because they lived on an unlevel gravel road, and the low clearance of the trailer would have prevented Long from driving the trailer to their home.

The district court denied the Longs' motion for a new trial based on this line of questioning because it occurred during cross-examination after Mr. Long had given conflicting or "confused" testimony about how the injury had occurred, Long and his wife were given full opportunity to refute the allegation, and, to the extent the questioning was improper, "it was surely a minor point in a long trial, and the jury could not have been influenced by it." Long v. Cottrell, Inc., No. 4:99CV181 CDP, at 3 (E.D. Mo. Oct. 5, 2000) (order denying motion for new trial).

Improper questions that place prejudicial information before the jury may entitle the aggrieved party to a new trial. McBryde v. Carey Lumber Co., 819 F.2d 185, 188 (8th Cir. 1987). "The trial court . . . has discretion in determining whether a question is so prejudicial to require a new trial 'because the trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.'" Id. (quoting Williams v. Mensey, 785 F.2d 631, 637

5

(8th Cir. 1986), in turn quoting <u>Harris v. Zurich Ins. Co.</u>, 527 F.2d 528, 531 (8th Cir. 1975)). We thus limit our review to abuse of discretion. <u>Id.</u>

We do not believe the district court abused its discretion in denying a new trial based on this line of questioning, even without a limiting instruction. The district court refused the instruction in an effort to avoid focusing the jury's attention on the line of questioning. Further, as the district court noted, Mr. Long and his wife both refuted any inference that he detoured home and hurt his back there, the questions before the jury were minimal, and it occurred on the first of a five day trial. Cottrell never again brought up the issue of whether Mr. Long detoured home, either during trial or during closing arguments. Based on our review of the cold record, we defer to the district court's "superior vantage point" as the line of questioning was not "plainly unwarranted and clearly injurious." <u>Alholm v. Am. S.S. Co.</u>, 144 F.3d 1172, 1181 (8th Cir. 1998) (internal quotations and citations omitted)). "Additionally, any suggestion that [Cottrell] withheld evidence [of the corroborating Allied employee] would not require a new trial because the issue was raised on cross examination and the jury had a full opportunity to hear evidence from both sides which it could evaluate." <u>Id.</u> at 1182.

The Longs also argue that they are entitled to a new trial because the district court erroneously allowed Cottrell's vice-chairman, Elwood Feldman, to testify despite Cottrell's failure to properly disclose him as an expert. The district court denied the Longs' request for a new trial because it found that Feldman testified as a fact witness only and did not testify as an expert.

The district court has wide discretion in deciding whether to allow the testimony of witnesses not listed prior to trial, and any such decision will be overturned only if it results in a clear abuse of discretion. <u>Boardman v. Nat'l Med. Enters.</u>, 106 F.3d 840, 843 (8th Cir. 1997). Even if Feldman should have been precluded from offering expert opinion testimony, such preclusion would not affect his ability to testify as a fact witness. <u>See</u> <u>Easley v. Anheuser-Busch, Inc.</u>, 758 F.2d 251, 258 (8th Cir. 1985)

6

(holding that the district court erred in preventing in-house experts from testifying as fact witnesses, though properly excluded as expert witnesses for failing to comply with discovery, despite difficulty in separating fact and opinion testimony). The district court denied the Longs' pretrial motion to bar Feldman from testifying, ruling that he would be allowed to testify as a fact witness and any issues regarding opinion testimony were best left for trial. However, the Longs never objected during Feldman's testimony on the basis that he gave improper opinion testimony. To the extent the Longs have preserved this issue, see McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1406-07 (8th Cir. 1994) (limiting review to plain error where party did not object to expert's testimony), we reject the argument. Compare Jackson v. City of St. Louis, 220 F.3d 894, 897 (8th Cir. 2000) (refusing to consider an argument that a fact witness was erroneously allowed to testify as an undisclosed expert where the defendant did not object during the witness's testimony).

Even if Feldman has testified in numerous other products liability cases for Cottrell, Rule 26(a)(2)(B) was not triggered because the testimony he gave in this case was not expert in nature. See Fed. R. Civ. P. 26(a)(2)(B) (requiring expert disclosure for a witness "whose duties as an employee of the party regularly involve giving expert testimony" (emphasis added)). Feldman testified based on his first-hand experience from working in the industry and his involvement in Cottrell's design and testing processes. Cottrell did file a Supplemental Rule 26 Disclosure Statement after the expert discovery deadline, listing Feldman as a potential expert witness and offering his opinion that the ratchet was not unreasonably dangerous when put to its intended use and that Long improperly used the ratchet. Upon review of Feldman's trial testimony, however, we do not find, nor have the Longs directed us to, passages in the transcript where Feldman testified at trial to those opinions listed in the disclosure. Feldman did not testify at all about the safety of the ratchet. The only testimony by Feldman regarding whether Long improperly used the ratchet was Feldman's testimony that pulling on the ratchet as hard as one could, as Long had testified, was not proper procedure or protocol, based on Feldman's experience as a trailer manufacturer and his

personal knowledge of Ford's tie-down procedures. (Tr. at 594.) See Brandt Distrib. Co. v. Fed. Ins. Co., 247 F.3d 822, 825-26 (8th Cir. 2001) (holding that Rule 26 was not implicated where a fire captain who investigated a particular fire testified that the fire was a "fraud fire" because the conclusion was a logical inference from his investigation, the captain did not opine who might have set the fire, and the defendant had not retained the captain as an expert).

The Longs also claim that Feldman offered opinions regarding state of the art in the industry, what other manufacturers were creating, the feasability of alternatives, and lack of complaints about the ratchet. Although the Longs have not directed us to the specific testimony wherein they believe Feldman offered these opinions, our review reveals that Feldman's testimony was based on his personal knowledge and was not in the form of expert opinion. To the extent that Feldman discussed what other trailer manufacturers were doing in the industry, his testimony was expressly limited to his own knowledge and experience. Similarly, any testimony about the feasibility of alternative designs was limited to Feldman's experience with Cottrell in its efforts to design alternative systems. Contrary to the Longs' assertion that Cottrell admitted in its Response to Plaintiff's Motion for New Trial that Feldman testified that there were no other complaints about the ratchet being defective, the Response actually states that "Mr. Feldman's testimony . . . consisted of efforts by Cottrell to develop a quick-release ratchet, not 'opinions' regarding . . . the lack of complaints regarding product defect. Mr. Feldman . . . provided no testimony regarding 'lack of complaints regarding product defect.'" (J.A. at 1149-50 (emphasis added).) Our review of Feldman's trial testimony comports with Cottrell's version of the testimony rather than the Longs' mischaracterization. We have carefully reviewed Feldman's trial testimony and agree with the district court that it was factual and not expert in nature. The district court did not abuse its discretion in denying the Longs' motion for a new trial.

III. Summary Judgment in Favor of GM

The district court granted GM's motion for summary judgment, finding that GM did not design or manufacture the allegedly defective ratchet, thus precluding the Longs' strict liability claims, and that GM owed no duty to Mr. Long, thus precluding the Longs' negligence claims. In this appeal, the Longs argue that there is a genuine issue of fact regarding whether GM prohibited use of the quick release ratchet, which arguably would have prevented Mr. Long's injury. The Longs also argue that GM can be held liable in strict liability based on its influence of the design of the ratchet and in negligence because Mr. Long's injury was foreseeable to GM.

We review the district court's grant of summary judgment de novo. "Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact in dispute." Larsen v. Mayo Med. Ctr., 218 F.3d 863, 866 (8th Cir.), cert. denied, 121 S. Ct. 625 (2000).

Another panel of our court recently addressed this same issue in a suit against GM and a different trailer manufacturer. See Ford v. GACS, Inc., No. 00-1043, 2001 WL _____, (8th Cir. ___, 2001). That case involved an injury to Mr. Ford, an automobile hauler, while he was untying a vehicle from his transport trailer using a manual ratchet device nearly identical to the ratchet used by Long. Like Long, Mr. Ford argued that GM prohibited use of a quick release ratchet, which would have prevented his injury. Mr. Ford made the same arguments and cited the same cases in his appeal of the district court's grant of summary judgment in favor of GM. We reject the Longs' appeal for the same reasons our previous panel rejected Mr. Ford's. As discussed in Ford, Missouri courts require that an entity place a product in the stream of commerce before it can be liable under a products liability claim. See Ford, slip op. at 13-15; see also Mo. Rev. Stat. § 537.760(1); Bailey v. Innovative Mgmt. & Inv., Inc., 916 S.W.2d 805, 807 (Mo. Ct. App. 1995). Viewing the evidence in the light most favorable to the Longs, GM did not design the allegedly defective ratchet, but

9

merely rejected alternatives designed and offered by others as not meeting its needs. Whatever influence GM may have had over the design of the ratchet, it was insufficient under Missouri law to hold GM strictly liable for any alleged defect.

The Ford court also rejected a negligence claim against GM, holding that GM owed no duty to Mr. Ford. See Ford, slip op. at 15-16. Mr. Ford argued that his injury was foreseeable to GM based on reports at GM Haulaway Committee meetings of injuries from tying and untying vehicles and a general concern in the industry about driver injuries, much the way the Longs argue it here. "The common denominator which must be present [in a negligence action] is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." Parra v. Bldg. Erection Servs., 982 S.W.2d 278, 283 (Mo. Ct. App. 1998) (internal quotations omitted). The Longs have failed to point us to any basis in Missouri law that would supply the requisite duty owed by GM to the employee of the company GM hired to haul its vehicles.[4] For the reasons discussed by our court in Ford, we reject the Longs' negligence claim against GM. The district court correctly granted summary judgment in favor of GM.

IV.

For the foregoing reasons, we affirm the district court's judgments.

---

[4]Summary judgment for GM is even more warranted in this case. GM approved the use of a quick release ratchet on trailers hauling its vehicles in 1993, nearly four years before Long was injured, whereas Ford was injured before GM approved of the quick release ratchet. Long's employer chose not to retrofit his trailer with a quick release ratchet, although retrofitting was possible. Even if GM owed some duty to Long, we doubt Long would survive the proximate cause element of his negligence claim. See Lopez v. Three Rivers Elec. Co-op., Inc., 26 S.W.3d 151, 155 (Mo. 2000) (en banc) (listing elements of a negligence claim under Missouri law).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.