# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3425

_____

| | | |
|---|---|---|
| Patricia L. Larsen; Donald Larsen, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Mayo Medical Center; The Mayo | * | |
| Foundation; Mayo Clinic, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 12, 2000

Filed: July 14, 2000

_____

Before HANSEN and HEANEY, Circuit Judges, and MILLS[1], District Judge.

_____

HEANEY, Circuit Judge.

Patricia Larsen contracted an illness from medication administered to her during her hospitalization at the Mayo Medical Center ("Mayo"). She sued Mayo for medical malpractice. Mayo moved for summary judgment on the basis that Larsen's claim was time-barred. The district court granted the motion, and Larsen appeals. Because

_____

[1]The Honorable Richard Mills, United States District Judge, for the Central District of Illinois, sitting by designation.

Larsen failed to serve Mayo within the two-year statute of limitations, we affirm.

## FACTS

Larsen was hospitalized at Mayo from June 27, 1996 to July 6, 1996. She was diagnosed with bacterial endocarditis, and as part of her treatment, she was administered and prescribed the antibiotic Gentamicin.

On July 19, 1996, Larsen returned to Mayo, complaining of dizziness and nausea, and again was hospitalized. She was diagnosed with Gentamicin vestibular ototoxicity, an illness solely caused by taking the antibiotic. During her hospitalization, Mayo personnel told Larsen that she might never completely recover from the illness. They further discussed the nature of the illness, how it would affect her, and the option of undergoing vestibular rehabilitation. Larsen was discharged from Mayo on July 24, 1996. She returned on September 5, 1996 and September 13, 1996 for follow-up examinations.

Larsen filed her complaint against Mayo on May 29, 1998 wherein she alleged medical malpractice. On June 1, 1998, Larsen attempted to serve Mayo by mailing a copy of the summons and complaint and enclosing an Acknowledgment of Service form for Mayo to return. Mayo received the materials two days later, but did not sign and return the acknowledgment form. On June 15, 1998, Larsen's counsel contacted Mayo's in-house counsel, who informed him that Mayo would not admit service or assist Larsen in any way in suing his client.

On June 22, 1998, Larsen filed an amended complaint, which she again mailed to Mayo with an Acknowledgment of Service form. Mayo did not return the form, and on September 3, 1998, Larsen's counsel again contacted Mayo's counsel, who again told him that Mayo would not execute the form.

On September 4, 1998, Larsen mailed copies of the amended summons and complaint to the Olmstead County Sheriff's Department. The Sheriff's Department received the materials on September 8, 1998 and served Mayo the following day.

Mayo moved for summary judgment on the ground that Larsen's claim was time-barred. The district court granted the motion, noting that the statute of limitations for medical malpractice claims in Minnesota was two years.[2] It further held that although a medical malpractice cause of action generally accrues when a physician's treatment of the condition ends, this case falls into the "single act" exception because: (1) the alleged malpractice terminated on July 13, 1996 when Larsen was administered and prescribed Gentamicin; (2) the malpractice became irrevocable on July 19, 1996, when Larsen was diagnosed with vestibular ototoxicity; and (3) Larsen was fully aware by July 23, 1996 of the facts upon which her claim is based.

Having determined that the single act exception applies, the district court considered whether service was timely. It concluded that service was not effective until September 8, 1998, the date the Olmstead County Sheriff's Department received the summons and complaint for service on Mayo, and thus that Larsen's claims were time-barred. Larsen appeals the district court's grant of Mayo's summary judgment motion.

---

[2] The Minnesota Legislature extended the statute of limitations for medical malpractice actions commenced after August 1, 1999 from two to four years. See Minn. Stat. § 541.076 (2000). Because Larsen filed suit in 1998, the two-year statute of limitations applies. We note, however, that after August 1, 1999 Larsen filed another suit against Mayo alleging the same facts presented here. That action is now pending before the district court. Our holding is limited solely to this case and does not decide the issues pending in the second action.

**DISCUSSION**

We review the district court's summary judgment grant de novo. See Mueller v. Tinkham, 162 F.3d 999, 1002 (8th Cir. 1998). Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact in dispute. See Fed. R. Civ. P. 56(c); Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, the non-moving party bears the burden of presenting specific facts that create a genuine issue for trial. See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**I.      Accrual Date**

Federal jurisdiction in this case is based on diversity. Thus, Minnesota's substantive law, including its statute of limitations, applies. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945). At the time of filing, Minnesota law required that medical malpractice actions be brought within two years after the cause of action accrues. See Minn. Stat. § 541.07(1) (1988). Although a cause of action generally accrues on the date the medical treatment ceases, an exception exists where the negligence is considered a "single act." See Haberle v. Buchwald, 480 N.W.2d 351, 354-55 (Minn. Ct. App. 1992). The single act exception applies if: (1) there is a single act of negligence; (2) the act is completed at a precise time; (3) no continued course of treatment can either cure or relieve the harm resulting from the act; and (4) the plaintiff is actually aware of the facts upon which the claim is based. See id. (citing Crenshaw v. St. Paul Ramsey Med. Ctr., 379 N.W.2d 720, 721 (Minn. Ct. App. 1986)).

Larsen concedes that the first two elements are satisfied. She first argues, however, that a reasonable jury could find that the vestibular ototoxicity could be cured or relieved. Mayo, on the other hand, claims that no cure exists, and that Larsen's only

4

option was to attend vestibular rehabilitation and hope that her body could compensate for the loss of function caused by the illness.

The undisputed evidence in the record indicates that vestibular ototoxicity is incurable and cannot be relieved by treatment. During Larsen's hospitalization, Mayo physicians discussed with her the fact that "she may not completely recover function." (J.A. at 102.) The record also shows that Larsen's symptoms could not be relieved by treatment, and that any symptomatic changes could occur only if her body compensated for the loss of function. Thus, the district court correctly concluded that the third element of the single act exception was met.

Larsen also argues that a reasonable jury could find that she did not know the facts upon which her claim is based. However, she does not dispute that on July 19, 1996 hospital personnel "discussed frankly" with her that the Gentamicin caused the vestibular ototoxicity, and that "she may not completely recover." (Id.) Moreover, Larsen does not deny that on July 23, 1996, Mayo personnel discussed with her and her husband the nature of the illness, her prognosis, and the option of undergoing vestibular rehabilitation. Larsen was discharged on July 24, 1996. By that date, she knew she had contracted an illness, that the illness was caused by the prescribed antibiotic, and the effects of the illness. Hence, Larsen knew the facts upon which her medical malpractice claim is based.

Because all four elements of the single act exception were met as of July 24, 1996, the limitations period for Larsen's medical malpractice claim began running on that date.

## II.   Timeliness of Service

Larsen contends that service was timely even if the limitations period began to run on July 24, 1996. She argues that under the Federal Rules of Civil Procedure a

5

civil action is commenced by filing a complaint with the court, <u>see</u> Fed. R. Civ. P. 3, and that since she filed her complaint on May 29, 1998, her action is timely. This argument fails to recognize the case law of both the Supreme Court and our court.

Larsen correctly points out that the Federal Rules of Civil Procedure determine the date from which various timing requirements begin to run. They do not, however, affect the commencement of a lawsuit. <u>See</u> <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 750-52 (1980); <u>Walker v. Thielen Motors, Inc.</u>, 916 F.2d 450, 451 (8th Cir. 1990). Rather, state commencement rules apply because they are "part and parcel of the statute of limitations." <u>Walker</u>, 446 U.S. at 752. Accordingly, Minnesota's commencement rule, rather than the federal commencement rule, governs in this case.

Under Minnesota's Rules of Civil Procedure, a civil action is commenced:

> (a) when the summons is served upon that defendant, or
> (b) at the date of acknowledgment of service if service is made by mail, or
> (c) when the summons is delivered to the sheriff in the county where the defendant resides for service . . . .

Minn. R. Civ. P. 3.01.

Although Minnesota law controls the commencement of a lawsuit, service of process in federal diversity actions is procedural, and therefore, governed by the Federal Rules. <u>See</u> <u>Hajjiri v. First Minn. Sav. Bank F.S.B.</u>, 25 F.3d 677, 678 (8th Cir. 1994). Under the Federal Rules, a plaintiff may, among other things, notify the defendant of the commencement of the action and request that the defendant waive service of the summons. <u>See</u> Fed. R. Civ. P. 4(d)(2). If the defendant returns the waiver and the plaintiff files the waiver with the court, "the action shall proceed . . as if a summons and complaint had been served at the time of filing the waiver." <u>Id.</u> at 4(d)(4). However, if the defendant does not waive service, service has not been effected. <u>See</u> <u>Gulley v.</u>

6

Mayo Found., 886 F.2d 161, 165 ("[T]he provisions of [Rule 4] are to be strictly complied with . . . therefore, if the acknowledgment form is not returned, the formal requirements of mail service are not met and personal service must be obtained." (internal quotation marks omitted)); Alholm v. American Steamship Co., 144 F.3d 1172, 1176 (8th Cir. 1998) (noting mail service ineffective when acknowledgment form not returned).

In this case, Larsen twice mailed copies of the summons and complaint to Mayo, first on June 1, 1998 and again on June 22, 1998. Both times she enclosed an acknowledgment form, and both times, Mayo refused to execute the form. Because Mayo did not waive service by returning the acknowledgment form, the requirements for service by mail were not met. Mayo then was not served until the Olmstead County Sheriff's Department received a copy of the summons and complaint on September 8, 1998, more than a month after the two-year limitations period expired.

Larsen makes two alternative arguments, both of which are without merit. She claims that service was effective under Fed. R. Civ. P. 4(m), which states:

> Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service to be effected within a specified time . . . .

Larsen argues that Rule 4(m) conflicts with Minnesota's commencement rule, and thus, that the federal rule, not the state rule, governs. See Lewellen v. Morley, 875 F.2d 118, 121 (7th Cir. 1989) (holding where federal and state rules conflict, federal rule applies).

First, Fed. R. Civ. P. 4(m) is irrelevant. The rule is only a time restriction that requires the summons and complaint to be served within 120 days of the filing of the complaint. It does not address how or when a lawsuit is properly commenced.

7

Second, even if relevant, Fed. R. Civ. P. 4(m) does not conflict with Minnesota's commencement rule. In <u>Walker</u>, the Supreme Court interpreted a state commencement rule identical to that of Minnesota and held that the state rule did not conflict with the Federal Rules. <u>See</u> 446 U.S. at 752 ("[Each] can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict."). Because the rules do not conflict, Minn. R. Civ. P. 3.01 governs the commencement of Larsen's lawsuit.

Finally, Larsen argues that service was effective under Fed. R. Civ. P. 4(h), which provides for service on a corporation by delivering a copy of the summons and complaint to an officer, manager or authorized agent of the corporation. This argument also is meritless because the summons and complaint were mailed and not personally served on anyone during the limitations period. Further, they were not even mailed to an officer, manager or authorized agent of Mayo Clinic, but addressed to "Medical/Legal Department, Mayo Clinic." (J.A. at 63.) Thus, service was ineffective under Rule 4(h).

## CONCLUSION

The statute of limitations began to run in this case no later than July 24, 1996. The lawsuit was not commenced until September 8, 1998, over a month after the limitations period expired. Thus, the district court correctly concluded that Larsen's medical malpractice claim against Mayo is time-barred, and we affirm its decision to grant summary judgment.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8