# United States Court of Appeals

## For the First Circuit

No. 00-1357

AARON NETT, by and through his mother
and next best friend, ROBIN NETT,
and ROBIN NETT and JAMES NETT, Individually,

Plaintiffs, Appellants,

v.

MITCHELL J. BELLUCCI, M.D.;
PETER D. GROSS, M.D.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Circuit Judge,
Bownes,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Kenneth M. Levine, with whom Annenberg & Levine was on brief,
for appellants.
Michael J. Racette, with whom Bruce R. Henry, and Morrison,
Mahoney & Miller, LLP. were on brief, for appellees.

October 12, 2001

**LIPEZ, <u>Circuit Judge</u>**.  This appeal arises from a medical malpractice lawsuit alleging negligent prenatal care and injuries sustained by Aaron Nett during his delivery on April 2, 1992.  The Netts filed suit against the obstetrician, Mitchell Bellucci, M.D., on April 30, 1996.  When the Netts discovered that the problems during delivery stemmed, at least in part, from the erroneous reading of an ultrasound by radiologist Peter Gross, M.D., they filed a motion for leave to amend their complaint to include him as a defendant on March 10, 1999.  The Netts filed their amended complaint on April 26, 1999.  In between these two filings, the time during which the Netts could commence an action against Dr. Gross under Massachusetts' seven-year statutes of repose expired, and the district court dismissed their claim against Dr. Gross on that basis.  Because it is unclear, under Massachusetts law, whether the filing of a motion for leave to amend constitutes the commencement of the action for the purpose of the statutes of repose, or, as the district court held, the amended complaint itself must be filed within the statutory period, we certify, on our own motion, this question and a related question to the Supreme Judicial Court of Massachusetts (SJC).

**I.**

On April 2, 1992, Aaron Nett was born at the Milford-Whitinsville Hospital in Milford, Massachusetts, weighing more than

-2-

eleven pounds.[1] Due to his large size, a condition called macrosomia, Aaron's delivery was difficult and he sustained a nerve injury to his shoulder. Mitchell Bellucci, M.D., delivered Aaron and, based upon an ultrasound performed a week earlier, did not anticipate the complications. Michael Gross, M.D., was the radiologist who performed and interpreted the ultrasound on March 26, 1992, estimating the fetal weight to be eight pounds.

---

[1] Because of the importance of the dates in this matter, we offer the following timeline to summarize the dates set forth in the Part I narrative:

| | |
|---|---|
| March 26, 1992: | Dr. Gross performed the prenatal ultrasound. |
| April 2, 1992: | Aaron Nett is born. |
| April 30, 1996: | The Netts filed their complaint against Dr. Bellucci alleging negligent medical care. |
| March 10, 1999: | The Netts filed the initial motion for leave to amend to include Dr. Gross. |
| March 19, 1999: | The Netts served Dr. Gross with the motion for leave to amend. |
| March 29, 1999: | The Netts refiled the motion for leave to amend in compliance with the local rules. |
| March 31, 1999: | Dr. Gross filed an opposition to the plaintiffs' motion to amend. |
| April 8, 1999: | The district court granted the motion for leave to amend by handwritten note, assigning a due date of April 19, 1999 for the amended complaint. |
| April 26, 1999: | The Netts filed their amended complaint. |
| May 13, 1999: | Dr. Gross filed a motion to dismiss the amended complaint because it was not timely filed. |
| July 21, 1999: | The court rejected Dr. Gross's motion. |
| September 16, 1999: | Dr. Gross filed a motion for reconsideration of the district court's denial of the motion to dismiss the complaint. |
| January 21, 2000: | The court reversed its prior ruling, granting Dr. Gross's motion for reconsideration and dismissing the amended complaint. |

On behalf of her son, Robin Nett filed suit against Dr. Bellucci on April 30, 1996, asserting the obstetrician's negligence in the provision of prenatal care and in Aaron's delivery. Specifically, the Netts contended that Aaron's macrosomia derived from an undiagnosed case of gestational diabetes, for which Dr. Bellucci should have tested Mrs. Nett earlier in the pregnancy. In addition, the parents, Robin and James Nett, claimed loss of parental consortium.

During discovery, the plaintiffs attempted to obtain the ultrasound film from the hospital, initially serving a subpoena duces tecum on June 30, 1998. The hospital responded that the film had been destroyed. Despite plaintiffs' request, Dr. Gross also failed to produce the ultrasound film at his deposition on August 4, 1998, stating that in response to his inquiry to the manager of the hospital's file room he had been told the film was no longer available. Finally, on February 4, 1999, in response to a second subpoena duces tecum, the hospital recovered the film and forwarded it to the plaintiffs.

The trial date was scheduled for May 24, 1999. On March 10, 1999, the Netts filed their initial motion for leave to file an amended complaint to include Dr. Gross as a defendant. The amended complaint itself was not attached to the motion to amend, but the motion was accompanied by a ten-page memorandum which included a detailed summary of the facts of the case and indicated that the Netts intended to allege that Dr. Gross negligently misread the ultrasound taken one week prior

-4-

to Aaron's birth, and that this error contributed to the complications at delivery.  The memorandum also identified a medical expert who held the opinion that Dr. Gross had been negligent in reading the ultrasound.  Dr. Gross, in his opposition to the motion to amend, which he filed before the Netts had filed their amended complaint, rebutted the plaintiffs' memorandum point by point.

However, in filing their motion to amend, the plaintiffs failed to comply with Massachusetts District Court Local Rule 15.1, which requires the service of "the motion to amend upon the proposed new party at least ten (10) days in advance of filing the motion."  Local Rule 15.1(B).  Local Rule 15.1 was adopted by the District Court of Massachusetts to comply with the Expense and Delay Reduction Plan of the District of Massachusetts, which sought to prevent the rampant late addition of parties that "inevitably delays the case and generated unnecessary procedural litigation."[2]  By requiring that parties who will be added to an action through an amended complaint be served with the motion to amend prior to filing the motion with the court, those parties

---

[2] Local Rule 15.1 --Addition of New Parties-- was drawn from Article III of the Plan, Rule 3.02.  The local rule was intended to supplement Federal Rule of Civil Procedure 15, which deals with amended pleadings.  As the Reporter's Notes to the local rule amendments emphasize: "Rule [15.1] is not designed to undermine the liberal amendment policy of Federal Rule of Civil Procedure 15, but to provide some guidance as to when leave to amend should be 'freely given' and to encourage the early addition of parties."

would be able to respond more quickly to the motion to amend when it was filed.

Although the local rule also requires that a certificate of service be included in the filing of the motion to amend, there is no evidence that the clerk of the court rejected the initial filing. After discovering their omission, the plaintiffs, of their own accord, served Dr. Gross with the motion for leave to amend their complaint, as well as a motion to extend time, on March 19, 1999. In compliance with the local rule, these motions were then refiled with the court on March 29, 1999. Again, the plaintiffs did not include the proposed amended complaint with these motions. Dr. Gross opposed the plaintiffs' motion for leave to amend the complaint, arguing undue delay and prejudice (with no reference to the statute of repose issue). The court granted the plaintiffs' motion on April 8, 1999, giving them until April 19, 1999, to file the amended complaint. They did not file that complaint until April 26, 1999.

On May 13, 1999, Dr. Gross filed a motion to dismiss the amended complaint, arguing that the plaintiffs' claims were barred by the state's seven-year statutes of repose. See Mass. Gen. Laws ch. 231, § 60D;[3] Mass. Gen. Laws ch. 260, § 4.[4] The ultrasound was performed and

---

[3] The statute governing Aaron Nett's cause of action reads: [A]ny claim by a minor against a health care provider stemming from professional services or health care rendered, whether in contract or in tort, based on the alleged act, omission or neglect shall be commenced within three years

interpreted on March 26, 1992.  Therefore, Dr. Gross argued, the filing

of any amended complaint adding him as a defendant after March 26, 1999,

must be disallowed because the claim had been extinguished after that

date.

On July 21, 1999, the court denied the motion to dismiss.

Exercising its discretion under Local Rule 1.3,[5] the court concluded:

> This Court, after considering the policies
> underlying Local Rule 15.1 and the statutes of
> repose, concludes that the plaintiffs' failure to
> comply with that Local Rule was harmless.  It will
> therefore excuse the violation and deem the motion
> to amend the complaint to have been properly filed
> on March 10, 1999.

Finding that the motion seeking leave to amend would have been filed

prior to the expiration of the repose period but for the violation of

---

from the date the cause of action accrues, except that a
minor child under the full age of six years shall have until
his ninth birthday in which the action may be commenced, but
in no event shall any such action be commenced more than
seven years after occurrence of the act or omission which is
the alleged cause of the injury upon which such action is
based.
Mass. Gen. Laws ch. 231, § 60D.

[4] The statute governing the parents' loss of consortium claim
reads: "Actions of contract or tort for malpractice, error or mistake
against physicians . . . shall be commenced within three years after
the cause of action accrues, but in no event shall any such action be
commenced more than seven years after the occurrence of the act or
omission which is the alleged cause of injury upon which such action is
based."  Mass. Gen. Laws ch. 260, § 4.

[5] Local rule 1.3 reads: "Failure to comply with any of the
directions or obligations set forth in, or authorized by, these Local
Rules may result in dismissal, default, or the imposition of other
sanctions as deemed appropriate by the judicial officer."

Local Rule 15.1, the court ruled that "the time that elapsed between the filing of the motion to amend [March 10, 1999] and the filing of the amended complaint [April 26, 1999] is tolled for the purpose of the applicable statutes." In making this ruling, the court apparently concluded that only the filing of the amended complaint itself, rather than the filing of any motion to amend, would constitute the commencement of an action for the purpose of the statutes of repose.

Dr. Gross filed a motion for reconsideration of the denial of the motion to dismiss. In his memorandum in support of the motion, Dr. Gross urged the court to "more fully address the issue of the determination of the date of 'commencement' of the Plaintiffs' action" and challenged the court's authority to toll the running of the statutes of repose in this case. In reevaluating its decision, the court wrote:

> Although the Court originally permitted a tolling of the statute of repose between the filing of the motion for leave to amend the complaint (March 10, 1999) and the filing of the amended complaint (April 23, 1999)[6], . . . such tolling of a statute of repose was improper. The plaintiffs did not file a claim against Dr. Gross before the period of repose expired and therefore any such claim had already been irretrievably extinguished.

The claim against Dr. Gross was dismissed on January 21, 2000.

**II.**

---

[6] The actual date on which the Netts filed the amended complaint was April 26, 1999.

The district court had diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332, requiring it to apply the substantive law of Massachusetts.  See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Catex Vitol Gas, Inc. v. Wolfe, 178 F.3d 572, 576 (1st Cir. 1999).  The Massachusetts laws at issue have been deemed statutes of repose.  See McGuinness v. Cotter, 591 N.E.2d 659, 663 (Mass. 1992).  Although the Massachusetts courts have not explicitly characterized the repose statutes as substantive law, Cosme v. Whittin Machine Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994) ("[S]tatutes of repose are not clearly procedural. . . ."), "[a] mass of authority treats statutes of repose as substantive rather than procedural."  Pinkham v. Collyer Insulated Wire Co., No. 92-0426B, 1994 U.S. Dist. LEXIS 21490 at *17-*18 (D.R.I. 1994) (citing cases to support a finding that "[a] mass of authority treats statutes of repose as substantive rather than procedural"); see also Romani v. Cramer, Inc., 992 F. Supp. 74, 76 (D. Mass. 1998) ("[S]tatutes of repose are substantive in nature under federal law."); Alves v. Siegel's Broadway Auto Parts, Inc., 710 F. Supp. 864, 869 (D. Mass. 1989) (reasoning that the Massachusetts courts would find statutes of repose to be substantive in nature because they "relate to the very existence of the cause of action itself.").  We agree with this analysis.

Therefore, pursuant to the law of Massachusetts, we must answer two questions: (1) when did the statutes of repose begin to run;

(2) when did the Netts commence their action against Dr. Gross for the purpose of the statutes of repose. The answer to the first question is easy. The answer to the second question is more elusive.

## A. Triggering the Statutes of Repose

The plaintiffs claim that the repose period commenced on April 2, 1992, the date of Aaron Nett's injury at birth. Furthermore, the Netts argue that the repose period could not commence prior to Aaron's birth because he could not bring an action against Dr. Gross until his birth. The defendants contend that the repose period began when the allegedly negligent act was performed, meaning the day that the ultrasound was performed and interpreted.

The plain language of the statutes of repose resolves these competing contentions. The controlling date for the commencement of the repose period is the date of the "occurrence of the act or omission which is the alleged cause of the injury upon which such action is based." Mass. Gen. Laws ch. 231, § 60D. Indeed, the statutory period conspicuously "is not related to the accrual of any cause of action." Klein v. Catalano, 437 N.E.2d 514, 516 (Mass. 1982); see also Tindol v. Boston Hous. Auth., 487 N.E.2d 488, 490 (Mass. 1986). Given the clarity of the statutory language, and the confirmation of its import by the Massachusetts courts, the triggering date for the statute of repose period in this case is March 26, 1992, the date of the ultrasound performed by Dr. Gross.

-10-

## B. Commencement of the Action

Massachusetts law is clear on the unforgiving nature of a statute of repose. "The effect of the statute of repose is to place an absolute time limit on the liability of those within its protection and to abolish a plaintiff's cause of action thereafter." McGuinness 591 N.E.2d at 662; see also Protective Life Ins. Co. v. Sullivan, 682 N.E.2d 624, 634 n.19 (Mass. 1997). "Unlike a statute of limitations, which bars a cause of action if not brought within a certain time period, a statute of repose prevents a cause of action from arising after a certain period. The bar of a statute of repose is absolute." James Ferrera & Sons, Inc. v. Samuels, 486 N.E.2d 58, 61 (Mass. App. Ct. 1985) (citations omitted); see also Klein, 437 N.E.2d at 516 (stating that after the repose period expires, the action is "completely eliminate[d]"); Plummer v. Gillieson, 692 N.E.2d 528, 531 (Mass. App. Ct. 1998) ("[T]he language of the statute is plain and unambiguous.").[7] Massachusetts courts have concluded that "[f]airness demands that a

---

[7] The Legislature intended the rigid requirements of the statute of repose. See Plummer, 692 N.E.2d at 530; Klein, 437 N.E.2d at 520 In Franklin v. Albert, 411 N.E.2d 458 (Mass. 1980), the Supreme Judicial Court held that an action for medical malpractice does not accrue until patients learn or should have learned of the harm they suffered. Id. at 459-60. Remarking on the policy basis for Mass. Gen. Laws ch. 231, § 60D, the Plummer court stated: "In order to counter the effect of [the Franklin] decision on the cost of malpractice insurance and its resulting effect on the cost of health care, the Legislature amended the applicable statute of limitations for medical malpractice claims for both minors and adults by adding a statute of repose . . . ." 692 N.E.2d at 530.

-11-

defendant at some time should be secure in the knowledge that the slate has been wiped clean." Tindol, 487 N.E.2d at 490 (quotations omitted).

Sensitive to these precedents, the district court concluded in its ruling on the motion for reconsideration that it had impermissibly tolled the Massachusetts statutes of repose by allowing the motion to amend filed by the Netts on March 10, 1999 to stop the running of the seven-year statutory period until the Netts could file their amended complaint against Dr. Gross on April 26, 1999, more than seven years after Dr. Gross performed the prenatal ultrasound on March 26, 1992. There is an unstated premise in this ruling -- that the filing of the motion for leave to amend the complaint to add a party does not constitute the commencement of the action for the purpose of the statutes of repose; instead, the amended complaint itself must be filed after court approval of the motion to amend to meet the commencement requirement of the statutes of repose. If this unstated premise is incorrect, and if Massachusetts law would treat the March 10, 1999 motion for leave to amend as the commencement of the action against Dr. Gross for the purpose of the statutes of repose, then the district court may have erred in ruling that only the filing of the amended complaint itself against Dr. Gross would commence the action for the purpose of the statutes of repose.

We turn to that commencement of the action question, explaining further why we look to the law of Massachusetts for the

-12-

answer.  In Walker v. Armco Steel Corp., 446 U.S. 740, 752 (1980), the Supreme Court held that "in diversity actions Rule 3 [of the Federal Rules of Civil Procedure on commencement of the action] governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." Id. at 751. More specifically, Walker held that a federal court sitting in diversity should adhere to state procedural (service) requirements integral to the state law (statute of limitations) so long as there is no federal rule directly on point.  Id. at 752-53; see also Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533-34 (finding that the state statute of limitations that requires service to commence an action controls rather than Fed. R. Civ. P. 3); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1057 (2d ed. 1987) (discussing commencement of actions in diversity cases involving statutes of limitations).  This holding has been reiterated by other courts of appeals.  "[T]he Federal Rules of Civil Procedure determine the date from which various timing requirements begin to run.  They do not, however, affect the commencement of a lawsuit.  Rather, state commencement rules apply." Larsen v. Mayo Med. Ctr., 218 F.3d 863, 867 (8th Cir. 2000) (involving timeliness of a malpractice action under the state statute of limitations) (citations omitted).  Given the close kinship between statutes of limitations and statutes of repose, this

-13-

reliance on state law to resolve action commencement issues raised by state statutes of limitations also applies to state statutes of repose.

Massachusetts law, however, is unsettled on the specific point of whether the filing of the motion for leave to amend the complaint to add a party or the filing of the amended complaint itself after approval of the motion to amend by the court constitutes the commencement of the action for the purpose of the statutes of repose. In Tindol, the SJC considered whether the allowance by the trial court of a motion to amend adding defendants to a previously filed complaint complied with the action commencement requirement of the applicable statute of repose. See 487 N.E.2d at 489-90. Throughout the decision the analysis of compliance focuses on the date that the motion to amend was filed. See id. However, because the motion to amend in Tindol was itself filed after the statutory period had expired, the specific question that must be decided here was not posed.

Because we have found no controlling precedent on the question of what constitutes the commencement of an action for the purpose of the Massachusetts statutes of repose, and this question may be determinative of the Netts' cause of action against Dr. Gross, we elect to certify the question to the Supreme Judicial Court of Massachusetts. See Kansallis Finance Ltd. v. Fern, 40 F.3d 476, 481 (1st Cir. 1994) (certifying a question of Massachusetts law to the SJC in the absence of controlling precedent); Mass. S.J.C. R. 1:03

-14-

(accepting certified questions which may be claim-determinative if there is no controlling SJC precedent).

We also need to certify a second question, contingent upon the SJC's response to our first question, concerning the effect of the Netts' violation of Local Rule 15.1. In its initial decision denying Dr. Gross's motion to dismiss, the district court concluded that the Netts' failure to comply with Local Rule 15.1 was harmless, in light of the policies underlying the local rule and the statutes of repose, and deemed the motion to amend filed on March 10, 1999 effective for the purpose of tolling the statutes of repose, without considering whether the motion to amend itself could constitute the commencement of the action against Dr. Gross for the purpose of the statutes of repose. In its subsequent reconsideration of that ruling, the court shifted its focus from the motion to amend to the filing of the amended complaint, ruling that the motion to amend could not toll the statutes of repose and that only the filing of the amended complaint satisfied those statutes. If the SJC were to conclude that the filing of the motion for leave to amend could constitute the commencement of the action for the purpose of the statutes of repose, we would have to consider the effect on that motion of the violation of local rules applicable to the filing of such motions. Therefore, in the event that the SJC concludes that the action can commence with the filing of the motion to amend, we request further guidance as to whether the policies underlying the

-15-

Massachusetts statutes of repose require that the motion to amend be filed in strict compliance with local rules of court applicable to the filing of such motions, or whether courts have discretion to excuse non-compliance with such local rules without running afoul of the statutes of repose.

CERTIFICATION

For the reasons stated in our opinion in this case, we certify the following two questions to the Supreme Judicial Court of Massachusetts:

(1) Is the operative date for commencement of an action for purposes of the Massachusetts statutes of repose the date of filing of a motion and supporting memorandum for leave to amend a complaint to add a party (assuming timely service), or is the operative date the date the amended complaint is filed after leave of court is granted, when leave of court is required by the Rules of Civil Procedure to file an amended complaint?

(2) If the answer to Question No. 1 is that the operative date is the date of filing of the motion for leave to amend, do the policies underlying the statutes of repose require that such filings be in compliance with the local rules of court applicable to the filing of such motions, or do those

policies permit the court in its discretion to excuse non-compliance with the local rules?

This court certifies that these questions may be determinative of a cause of action in this case and that it appears there is no controlling precedent in the decisions of the Supreme Judicial Court. We would also welcome any additional observations about relevant Massachusetts law the SJC may wish to offer. The clerk of this court is to forward, under the official seal of this court, seven copies of the certified questions and our opinion in this case, along with the briefs and appendix filed by the parties, to the Supreme Judicial Court of Massachusetts. We shall await its reply with interest and appreciation. In the interim, we retain appellate jurisdiction. We note that the parties have not briefed to this court the two questions certified, and we recommend that the Supreme Judicial Court receive additional briefing.