RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SANDRA ALBRIGHT,

                *Plaintiff-Appellant*,

    *v.*

CARL CHRISTENSEN, M.D.; CHRISTENSEN RECOVERY
SERVICES; CARL W. CHRISTENSEN, M.D., PLLC,

                *Defendants-Appellees*.

No. 21-1046

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:20-cv-11453—Laurie J. Michelson, District Judge.

Argued: July 21, 2021

Decided and Filed: January 31, 2022

Before: SILER, MOORE, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Edward J. Stechschulte, KALNIZ, IORIO & REARDON, CO., LPA, Toledo, Ohio, for Appellant. John J. Ramar, RAMAR & PARADISO, P.C., Troy, Michigan, for Appellees. **ON BRIEF:** Edward J. Stechschulte, KALNIZ, IORIO & REARDON, CO., LPA, Toledo, Ohio, for Appellant. John J. Ramar, RAMAR & PARADISO, P.C., Troy, Michigan, for Appellees.

     MOORE, J., delivered the opinion of the court in which DONALD, J., joined. SILER, J. (pp. 13–15), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Sandra Albright asked Dr. Carl W. Christensen to treat her opioid addiction.  Christensen administered three drugs that allegedly caused Albright severe emotional and physical harm.  Albright (an Ohio citizen) sued Christensen (a Michigan citizen) and his practice in federal court.  Defendants would have us apply Michigan's affidavit-of-merit and presuit-notice rules for medical-malpractice actions in this diversity action; Albright insists that her claims sound in negligence and that these rules do not apply in the federal courts.  We must confront two well-known cases—*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and *Hanna v. Plumer*, 380 U.S. 460 (1965)—to resolve this classic civil-procedure conundrum.  We agree with Defendants that Albright has asserted a medical-malpractice claim.  *Hanna*, however, requires us to hold that the Federal Rules of Civil Procedure conflict with Michigan's affidavit-of-merit and presuit-notice requirements.  These state rules therefore do not apply in diversity cases in federal court.  Because the district court mistakenly invoked *Erie* and applied the presuit-notice rule in Albright's case, we **REVERSE** and **REMAND**.

## I. BACKGROUND

Sandra Albright was severely injured in a car accident.  R. 5 (Am. Compl.) (Page ID #17).  Albright used opioids to manage her chronic pain due to her traumatic injuries; she became addicted to opioids.  Appellant's Br. at 3.  Seeking treatment for her addiction, Albright turned to Dr. Carl W. Christensen to administer a one-week in-patient detoxification program.  R. 5 (Am. Compl.) (Page ID #18); Appellant's Br. at 3.  Christensen started Albright with a patient-controlled analgesia pump to supply her with hydromorphone, a pain reliever; he also gave Albright phenobarbital, which depresses the central nervous system.  R. 5 (Am. Compl.) (Page ID #19).  Christensen terminated these treatments after Albright became "anxious and tearful" while the two discussed the treatment.  *Id.*  Changing tack, Christensen twice administered Suboxone—an opioid-replacement medication—to Albright.  *Id.*  On both

occasions, Albright immediately developed muscle spasms, pain, contortions, restlessness, and feelings of temporary paralysis. *Id.* She refused further treatment and was discharged. *Id.* Albright still suffers shaking, muscle spasms, and emotional distress. *Id.* (Page ID #19–20). Albright is a citizen of Ohio; Defendants are citizens of Michigan. *Id.* (Page ID #16–17).

Invoking the federal courts' diversity jurisdiction, Albright sued Christensen and his practice in the U.S. District Court for the Eastern District of Michigan. R. 1 (Compl.) (Page ID #1); R. 5 (Am. Compl.) (Page ID #16). She accused Defendants of negligence. R. 5 (Am. Compl.) (Page ID #20–23). Defendants filed in the district court a "Motion for Summary Judgment in Lieu of an Answer, filed pursuant to Fed. R. Civ. P. 12(b)(6)." R. 13 (8/13/20 Mot. at 1) (Page ID #74). Defendants asserted that Albright's case is properly viewed as a medical-malpractice—not a negligence—suit. They also asserted that Albright had failed to comply with Michigan rules for medical-malpractice actions. *Id.* at 2 (Page ID #75).

Looking to Michigan law, the district court found that Albright raised a medical-malpractice claim. *See Albright v. Christensen*, 507 F. Supp. 3d 851, 856 (E.D. Mich. 2020). The district court turned to the question of whether two of Michigan's rules for medical-malpractice actions—Michigan Compiled Laws § 600.2912b and § 600.2912d—apply in diversity cases. *See id.* Section 600.2912b contains Michigan's presuit-notice rule for persons seeking to bring a medical-malpractice action: "a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." MICH. COMP. LAWS § 600.2912b. Section 600.2912d contains Michigan's affidavit-of-merit rule: "the plaintiff in an action alleging medical malpractice . . . shall file with the complaint an affidavit of merit signed by a health professional . . . ." MICH. COMP. LAWS § 600.2912d. The district court found that the affidavit-of-merit requirement does not apply in federal court but that the presuit-notice requirement does. *Albright*, 507 F. Supp. 3d at 861, 863. Because Albright failed to comply with the presuit-notice requirement, the district court granted Defendants' "motion for summary judgment" and dismissed Albright's case with prejudice. *Id.* at 864. Albright appealed.

## II.  JURISDICTION

The parties are completely diverse, and Albright seeks $300,000 in damages.  R. 5 (Am. Compl.) (Page ID #16, 23).  Title 28 U.S.C. § 1332 thus accords us with diversity jurisdiction to consider this action.

## III.  STANDARD OF REVIEW

We begin by clarifying the posture of this case and the standard of review.  Defendants responded to Albright's complaint with a "Motion for Summary Judgment in Lieu of an Answer, filed pursuant to Fed. R. Civ. P. 12(b)(6)."  R. 13 (8/13/20 Mot. at 1) (Page ID #74).  Acknowledging that Albright did not contest the nature of Defendants' motion, the district court treated Defendants' filing as a summary-judgment motion.  *Albright*, 507 F. Supp. 3d at 854 n.1, 864.  Defendants' confusingly titled motion invoked Rule 12(b)(6) and cited only Albright's complaint.  R. 13 (8/13/20 Mot. at 1–11) (Page ID #74–84).  Although Defendants later filed an affidavit sworn by Christensen, R. 12 (Christensen Aff. at 1) (Page ID #71), the district court's decision referred to only the complaint.  Albright, moreover, had no window to present to the district court all pertinent material for a summary-judgment decision.  FED. R. CIV. P. 12(d); *see Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).  Because matters outside the pleadings were not relied on by the district court, *see* FED. R. CIV. P. 12(d), we conclude that Defendants' filing is a Rule 12(b)(6) motion and we treat the district court's decision as dismissing Albright's complaint for failure to state a claim upon which relief can be granted.  We review de novo a district court's dismissal of an action on Rule 12(b)(6) grounds.  *Daunt v. Benson*, 999 F.3d 299, 307 (6th Cir. 2021).

## IV.  ANALYSIS

### A.  Negligence versus Medical Malpractice

We now decide whether Albright's as-labeled negligence allegations constitute a medical-malpractice claim.  Michigan law provides that the substance—not the label—of an allegation determines whether a plaintiff raises a medical-malpractice or a negligence claim.  *See Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 464 (Mich. 1999).  "[A] court must

ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004).

Albright complains that Christensen administered to her three drugs during her detoxification. To us, a doctor's management of an opioid-addiction treatment program and administration of medication involves more sophisticated professional knowledge than a hospital aide applies, for example, when moving a patient to a bathroom, *cf. Trowell v. Providence Hosp. & Med. Ctrs., Inc.*, 918 N.W.2d 645, 647 (Mich. 2018), or when securing a patient's bed railings, *cf. Jackson v. Harper Hosp.*, No. 262466, 2006 WL 2613599, at *4 (Mich. Ct. App. Sept. 12, 2006) (per curiam). Christensen's treatment of Albright "involve[d] matters of medical judgment in the course of a professional relationship with [Christensen,]" *Trowell*, 918 N.W.2d at 648; was "beyond the ken of common knowledge"; and "require[d] understanding and consideration of the risks and benefits of using [these three drugs] in light of [Albright's] medical history and treatment goals," *Bryant*, 684 N.W.2d at 875. We thus conclude that Albright's claims sound in medical malpractice.

## B. The Affidavit-of-Merit and Presuit-Notice Requirements

Having decided that Albright has raised a medical-malpractice claim, we now determine whether Michigan's affidavit-of-merit and presuit-notice requirements apply in federal court.

### 1. The Multistep Test

To decide which Michigan and federal laws apply in this diversity action, we must follow a familiar multistep choice-of-law framework. Under *Hanna*, we must first decide whether state law conflicts with a valid federal rule of procedure on point. 380 U.S. at 469–70. "The initial step is to determine whether, when fairly construed, the scope of [of a federal rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–

750 & n.9 (1980)); *see also Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) ("In other words, do the Federal Rules answer 'the same question' as the state rule?").

If a state law collides with a federal rule, we must determine whether the federal rule applies under the Rules Enabling Act (REA) and relevant constitutional standards per Justice Stevens's controlling concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 421–25 (2010) (Stevens, J., controlling opinion). *See Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 & n.2 (6th Cir. 2016).[1] The relevant question is whether the federal rule is a "general rule[] of practice and procedure" that does "not abridge, enlarge or modify any substantive right" and is "procedural in the ordinary use of the term." *Shady Grove*, 559 U.S. at 418, 423 (Stevens, J., controlling opinion) (citation omitted).

If the state law does not conflict with a federal rule, we must assess whether the twin aims of *Erie* are implicated, namely "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *See Hanna*, 380 U.S. at 468. If both *Erie* prongs are met, we would then consider whether an overriding federal interest justifies the application of federal law. *See Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 537–38 (1958); *cf. Gasperini v. Ctr. for Hums., Inc.*, 518 U.S. 415, 438 (1996).

## 2. The Affidavit-of-Merit and Presuit Notice Requirements

Relevant to this case are Federal Rules of Civil Procedure 3, 8(a), 9, 11, and 12(b)(6). Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3. Rule 8(a) requires pleadings to contain "a short and plain statement of the claim."

---

[1]In *Gallivan*, we wrote: "The Federal Rules are presumptively valid. *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987)." *Gallivan*, 943 F.3d at 294. The district court frames this snippet of *Gallivan* as a faulty endorsement of Justice Scalia's plurality opinion in *Shady Grove* and a mistaken reliance on a pre-*Shady Grove* opinion. *See Albright*, 507 F. Supp. 3d at 859.

We do not read *Gallivan* this way. *Burlington Northern* survives and is compatible with Justice Stevens's controlling concurrence in *Shady Grove*. *See Shady Grove*, 559 U.S. 393, 421–22 (2010) (Stevens, J., controlling opinion) (incorporating *Burlington Northern*). And, as the *Gallivan* court correctly pointed out, "the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Gallivan*, 943 F.3d at 294 (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015)). The *Gallivan* court properly cited as a "majority opinion" the portions of Justice Scalia's opinion that received five votes. *Id.* at 293, 296. None of *Gallivan*'s citations refer to Justice Scalia's analysis of the REA and associated constitutional standards, which received only four votes. But, to avoid future confusion, we restate our conclusion in *Whitlock* that Justice Stevens's concurrence in *Shady Grove* controls the test governing the REA and constitutional standards.

FED. R. CIV. P. 8(a)(2).  Rule 9 specifies when heightened pleadings are required.  *See* FED. R. CIV. P. 9.  Rule 11 wards against frivolous claims and defenses.  *See* FED. R. CIV. P. 11; *see id.* advisory committee's note to 1993 amendment ("[Rule 11(b)(2)] establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.").  Rule 11 states that "Unless a rule or statute[2] specifically states otherwise, a pleading need not be verified or accompanied by an affidavit" and that an attorney's signature on, submission of, or advocacy regarding a filing certifies that the argument is nonfrivolous.  *Id.* 11(a), (b).[3]  And Rule 12(b)(6) guarantees that a complaint that alleges sufficient facts will survive a motion to dismiss.  *See* FED. R. CIV. P. 12(b)(6).

We agree with the district court's finding that Michigan's affidavit-of-merit requirement conflicts with the Federal Rules of Civil Procedure.  The question in dispute is whether a plaintiff must provide an affidavit of merit in order to state a claim of medical malpractice.  *See Gallivan*, 943 F.3d at 293.  Directly relevant here is our recent decision *Gallivan*, in which we tackled an almost-identical Ohio affidavit-of-merit requirement.  *See id.*  In *Gallivan*, we explained that Rules 8(a), 9, and 12(b)(6) do not require that plaintiffs file affidavits with their complaints in order to state a claim and held that these Federal Rules exclude other requirements that must be satisfied for a complaint to state a claim.  *See id.* at 293–94.  We thus concluded in *Gallivan* that that Rules 8(a), 9, and 12(b)(6) answer this question in dispute.  *See id.* at 294.  We reach the same conclusion in the present case.  Our decision is bolstered by Rule 11, which states outright that "a pleading need not be verified or accompanied by an affidavit."  FED. R. CIV. P. 11(a).  Because § 600.2912d collides with Rules 8(a), 9, 11, and 12(b)(6), we hold that Michigan's affidavit-of-merit requirement does not apply in federal court.

---

[2]"We acknowledge that Rule 11 states a pleading need not contain a verification '[u]nless a rule or statute specifically states otherwise.'  The rule's reference to other rules or statutes, however, means other *federal* rules or statutes."  *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1360 (11th Cir. 2014) (alteration in original, emphasis added, citation omitted).

[3]We note that Albright did not argue that Rule 11 conflicts with Michigan's rules.  *See* Appellant's Br. at 14–15.  But it would be disingenuous for us to ignore a rule that so obviously conflicts with the affidavit-of-merit requirement.  *See* FED. R. CIV. P. 11(a) ("[A] pleading need not be verified or accompanied by an affidavit.").  We are, moreover, persuaded by the Fourth Circuit's recent decision that Rule 11 conflicts with West Virginia's presuit requirements, which, as explained below, combines Michigan's presuit-notice and affidavit-of-merit rules.  *See Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021).

We disagree, however, with the district court's treatment of Michigan's presuit-notice requirement. "Under *Shady Grove*, what matters is whether the 'one-size-fits-all formula' for filing and maintaining a complaint set out by the Federal Rules is enough to 'provide[ ] an answer' to the question at issue:" whether Albright must supply presuit notice to file a lawsuit. *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (alteration in original).

Of the relevant Federal Rules, Rule 3 most obviously resolves this disputed question. That rule requires only the filing of a complaint to commence an action—nothing more. *Compare* FED. R. CIV. P. 3 ("A civil action *is commenced* by filing a complaint with the court" (emphasis added)) and *id.* advisory committee's note to 1937 adoption ("[Rule 3] provides that the *first step in an action* is the filing of the complaint." (emphasis added)), *with* MICH. COMP. LAWS § 600.2912b ("[A] person *shall not commence an action* alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." (emphasis added)); *see also* 4 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ADAM N. STEINMAN, FEDERAL PRACTICE AND PROCEDURE § 1052 (June 23, 2021 Update) ("In federal actions based on diversity of citizenship jurisdiction, federal courts apply state law to decide when a lawsuit was commenced for purposes of computing limitations periods, as prescribed by the Supreme Court in Walker v. Armco Steel Corporation. Other than that, what constitutes filing under Rule 3 is governed by federal law." (footnotes omitted)).

The dissent argues that presuit notice is a *prerequisite* to the commencement of a medical malpractice suit and therefore does not conflict with Rule 3. In interpreting the presuit notice provision, however, the Michigan Supreme Court explained: "Although a civil action is generally commenced by filing a complaint, a medical malpractice action can only be commenced by filing a timely [notice of intent] and then filing a complaint and an affidavit of merit . . . ." *Tyra v. Organ Procurement Agency of Mich.*, 869 N.W.2d 213, 226 (Mich. 2015). The Michigan Supreme Court held that, for the purposes of determining how a civil action is commenced, the specific requirements of § 600.2912b(1) controlled over the more general terms of MICH. COMP. LAWS § 600.1901, which is identical to Federal Rule 3. The Michigan Supreme Court's interpretation of this provision underscores its conflict with Rule 3.

*Walker* addresses a different question than the one at issue in this case. The *Walker* Court considered whether Rule 3 conflicted with an Oklahoma statute that stated that the date of the commencement of an action for statute-of-limitations purposes turns on when the defendant is served. *Walker*, 446 U.S. at 741–43. The Court explained that Rule 3 does not affect a state statute of limitations. *See id.* at 750–51. But Section 600.2912b is distinguishable from the Oklahoma statute in *Walker*. The Oklahoma statute affected the commencement of an action only for calculating the statute of limitations: it impacts *when* a lawsuit is commenced. In contrast, the Michigan statute—like Rule 3—affects *how* a lawsuit is commenced.[4] Unlike the Oklahoma statute, the Michigan statute adds steps to the process of commencing an action. Because both Section 600.2912b and Rule 3 govern how a lawsuit is commenced, the two clearly conflict. *See Walker*, 446 U.S. at 750 n.9 ("The Federal Rules should be given their plain meaning. If a direct collision with state law arises from that plain meaning, then the analysis developed in *Hanna v. Plumer* applies.").[5]

Federal Rules 8(a), 9, 11, and 12 are on point, too. In its interpretation of § 600.2912b, the Michigan Supreme Court explained: "the failure to comply with the [presuit-notice] requirement *renders the complaint insufficient to commence the action*." *Burton v. Reed City Hosp. Corp.*, 691 N.W.2d 424, 429 (Mich. 2005) (emphasis added). The state high court clearly applies § 600.2912b(1) as a pleading requirement.

Because Michigan applies the pre-suit notice requirement as a pleading standard, we are also persuaded by the Fourth Circuit's recent decision in *Pledger*. The *Pledger* court addressed whether the federal courts must apply West Virginia's "pre-suit requirements" in diversity cases. *Pledger*, 5 F.4th at 516. Under West Virginia law,

---

[4]The dissent incorrectly asserts that the only significant distinction between the Oklahoma and Michigan statutes is that the former deals with service and the latter deals with pre-suit notice. Instead, the relevant distinction is that the Oklahoma statute governs *only* the statute of limitations. *See Walker*, 446 U.S. at 743 n.4 ("Oklahoma Stat., Tit. 12 § 97 (1971), provides in pertinent part: 'An action shall be deemed commenced within the meaning of this article [the statute of limitations]. . . . "). In contrast, though the Michigan law impacts the statute of limitations in this case, its scope is significantly broader and governs the commencement of an action for all purposes. *See* MICH. COMP. LAWS § 600.2912b.

[5]The dissent argues that our view "far exceeds Federal Rule 3's purpose." However, "*Shady Grove* emphasized that the purpose of the rules is irrelevant when the text is clear (as it is here)." *Gallivan*, 943 F.3d at 296.

[a]t least 30 days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve . . . *a notice of claim* on each health care provider the claimant will join in litigation. . . . The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a *screening certificate of merit*. The screening certificate of merit shall be executed under oath by a health care provider . . . .

W. VA. CODE § 55-7B-6(b) (emphases added). Put another way, West Virginia's presuit requirement is a hybrid of the two Michigan provisions at issue in Albright's case. Under West Virginia law, plaintiffs filing medical-malpractice claims must supply presuit notice to any defendant (analogous to § 600.2912b) that must include a certificate of merit (similar to § 600.2912d).

That West Virginia requires the certificate of merit to be served before the complaint is filed did not, however, dissuade the Fourth Circuit. Citing *Gallivan*, the *Pledger* court held that Rules 8(a), 9, 11, and 12 answer the question of "whether a medical malpractice plaintiff must provide pre-suit expert support for his claim" and that West Virginia Code § 55-7B-6(b) thus does not apply in diversity cases. *Pledger*, 5 F.4th at 519. That the affidavit of merit was required to be served *before* the filing of the complaint, rather than filed *with* the complaint, did not change the fact that the affidavit-of-merit requirement acted as a heightened pleading standard.

The same reasoning applies to the pre-suit notice requirement. Section 600.2912b(4) requires that the notice include:

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

MICH. COMP. LAWS § 600.2912b(4).  These requirements exceed those in Federal Rule 8(a), which requires only "a short and plain statement of the grounds for the court's jurisdiction"; "a short and plain statement of the claim showing that the pleader is entitled to relief"; and "a demand for the relief sought."  If Michigan law provided that its requirements be included in the complaint, rather than in the notice, that law would clearly not apply federal court.  The Fourth Circuit held in *Pledger* that serving an affidavit of merit before a complaint conflicted with federal pleading requirements.  In this instance, too, the state cannot circumvent federal pleading requirements by requiring plaintiffs to serve documents before filing the complaint.  Otherwise, the state could create any pleading requirement it chose and label it a notice requirement, and it would apply in federal court.  Such a result is inconsistent with both *Hanna* and the Federal Rules of Civil Procedure.

We must next decide whether the Federal Rules 3, 8(a), 9, 11, and 12 violate the REA or the Constitution under Justice Stevens's controlling test from *Shady Grove*.  Our conclusion comes easily.  "The Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act" and "we have no reason to doubt the validity of the Federal Rules at issue here."  *Gallivan*, 943 F.3d at 294.

To conclude, we reiterate that the first stage of the multistep test is "do the Federal Rules answer 'the same question' as the state rule?"  *Gallivan*, 943 F.3d at 293.  The answer is yes.  Rules 3, 8(a), 9, 11, and 12(b)(6) answer the two questions in dispute—whether Albright needs to file an affidavit with her complaint in order to state a claim and whether Albright must file a presuit notice to commence an action.  Under *Hanna*, "[a]ll that matters is that there is a conflict (check) and a valid Federal Rule (check again)."  *Gallivan*, 943 F.3d at 295.  We invoke *Erie* only if no on-point, valid Federal Rule of Civil or Appellate Procedure exists.  *See Shady Grove*, 559 U.S. at 398 (Scalia, J.) ("We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.").  Pursuant to *Hanna*, we hold that Michigan's affidavit-of-merit and presuit-notice requirements in diversity cases do not apply in the federal courts.

## V.  CONCLUSION

Because Michigan's affidavit-of-merit and presuit-notice requirements do not apply in diversity actions, Albright did not need to comply with them when she brought her medical-malpractice action.  We thus **REVERSE** and **REMAND**.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

SILER, Circuit Judge, concurring in part and dissenting in part. Michigan's medical malpractice laws require a plaintiff to provide pre-suit notice to the defendants and attach an affidavit of merit to her complaint. The majority concludes that the Federal Rules of Civil Procedure bar the application of both requirements in federal court. I agree with the majority's two-step framework and its conclusion regarding the affidavit of merit requirement, but because the Federal Rules are silent about pre-suit requirements, I respectfully dissent.

Begin, like the majority, with the question of conflict. A conflict arises when the Federal Rules "provide [a] different answer to the question in dispute." *Passmore v. Baylor Health Care System*, 823 F.3d 292, 296 (5th Cir. 2016) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). But none of the Federal Rules governs conduct prior to the commencement of an action. And Michigan's pre-suit notice requirement, unlike its affidavit of merit requirement, governs a plaintiff's conduct before a claim is filed. Nonetheless, the majority finds that "[Federal] Rule 3 most obviously resolves this disputed question."

So, let's turn to the Federal Rule and the Michigan law. On one hand, Federal Rule 3 states that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. On the other hand, Michigan's pre-suit law states that "a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." Mich. Comp. Laws Ann. § 600.2912b. The majority directs its attention to the language "is commenced" in Federal Rule 3 and "shall not commence" in Michigan's pre-suit notice law. Although that focus is understandable, it is misplaced.[1]

---

[1] *Pledger v. Lynch*, 5 F.4th 511, 2021 WL 3072861 (4th Cir. 2021), does not support the majority's opinion for two reasons. First, it dealt with West Virginia's affidavit of merit requirement. *Id.* at 520. And second, the Fourth Circuit did not rely on Federal Rule 3 at all.

States determine substantive rights. *See* U.S. Const. amend. X. And the phrase "shall not commence" only demonstrates that pre-suit notice is a prerequisite to or an element of a medical malpractice suit.[2] *Burton v. Reed City Hosp. Corp.*, 691 N.W.2d 424, 429 (Mich. 2005). As a result, Michigan courts have enforced the Michigan legislature's words as written. *See Trowell v. Providence Hosp. and Med. Ctrs., Inc.*, 918 N.W.2d 645, 653 (2018).

Consider also the implications of the majority's expansive view of conflict under Federal Rule 3. Can a plaintiff now bring a products liability suit without first purchasing the defective item? After all, both pre-suit notice and actual purchase are actions taken by a plaintiff to make out a claim.

The majority's view, moreover, far exceeds Federal Rule 3's purpose. "[T]he Federal Rules determine the date from which various timing requirements begin to run." *Larsen v. May Med. Ctr.*, 218 F.3d 863, 867 (8th Cir. 2000). That is, Federal Rule 3 is meant to establish with certainty when a suit has started.[3] *See* 4 Charles Alan Wright, Arthur R. Miller, Adam N. Steinman, Federal Practice and Procedure § 1051 (4th ed.). The majority employs Federal Rule 3 far afield from its purpose when using it to bar the application of a state substantive element of a claim.

Even if the majority is correct that the pre-suit requirement relates only to the commencement of an action, its conclusion remains incorrect. The commencement of an action is decided by state law, not federal law. *See Nett ex rel. Nett v. Bellucci*, 269 F.3d 1 (1st Cir. 2001) (citing *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 867 (8th Cir. 2000)); *see also* 4 Charles Alan Wright, at § 1057. In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980), ineffective appropriate service failed to toll the statute of limitations and the claim was time-barred. *Id*. So too here, Albright failed to give appropriate pre-suit notice and her claim may be time-barred.

---

**2***Gallivan* does not support a different conclusion. *Gallivan v. United States*, 943 F.3d 291, 296 (6th Cir. 2019). The Ohio Constitution prohibits the state supreme court from creating elements of a claim. *Id.* Of course, the Michigan legislature is free to determine substantive rights.

**3**The majority cites Wright, et. al. for the proposition that "what constitutes filing under Rule 3 is governed by federal law." *See* 4 Charles Alan Wright, Arthur R. Miller, Adam N. Steinman, Federal Practice and Procedure § 1052 (4th ed.). True. But that passage only indicates that federal law determines what acts count as filing a complaint; for example, by "depositing the complaint in the post-office box of an appropriate court officer or placing it with the clerk in some fashion." *Id*. (footnotes omitted).

Both statutes matter because of their relationship to the statute of limitations.  In other words, a claim's failure to commence because of improper service or a claim's failure to commence because of a lack of pre-suit notice results in the same outcome.  The majority gives no reason to treat them differently.

Because the pre-suit notice does not conflict with the Federal Rules, the requirement should apply in federal court if it is substantive.  *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).  To determine whether the requirement is substantive, the court should look at the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Id.*  Michigan's law encourages early settlement and seeks to curb medical costs.  The pre-suit notice requirement is "intertwined" with Michigan's malpractice liability scheme and a failure to enforce the requirement would "frustrate the purposes of the statute."  *Baber v. Edman*, 719 F.2d 122, 123 (5th Cir. 1983).  To be sure, the majority's decision will lead to plaintiffs' choosing the federal forum.

Unsurprisingly, no United States Court of Appeals circuit has ever found a conflict between Federal Rule 3 and a similar pre-suit requirement.  In diversity cases, this court must respect the substantive laws of the States.  I would AFFIRM the district court.